**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Douglas KRALIK,**
**Defendant-Appellant.**

**No. 78–1908.**

United States Court of Appeals,
Tenth Circuit.

Argued Oct. 15, 1979.

Decided Dec. 19, 1979.

Jackie N. Williams, Asst. U. S. Atty., Wichita, Kan. (James P. Buchele, U. S. Atty., Topeka, Kan., with her on the brief), for plaintiff-appellee.

Leonard D. Munker, Wichita, Kan. (Charles D. Anderson, Asst. Federal Public Defender, Wichita, Kan., with him on the brief), for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This search and seizure case pertains to a search of a container within a container. The officers had a valid search warrant which said that a sawed off shotgun was concealed in a described automobile. Upon opening the trunk of the automobile the officers discovered an unlocked suitcase which contained a sawed off shotgun. Defendant-appellant Kralik claims that the suitcase was his and should not have been searched without a second warrant. The jury found Kralik guilty of violating 26 U.S.C. § 5861(d) by possession of an unregistered shotgun having a barrel less than 18 inches in length. Kralik says that his motion to suppress should have been sustained. We affirm.

Detective Goseland of the Wichita, Kansas, police department had the residence of Larry Peckham under surveillance during the afternoon of May 4, 1978. Peckham drove up in a white Buick automobile and parked it in the driveway. Peckham made several trips from the house to the car. The detective saw him come out of the house with a blanket wrapped around a long object. A portion of the blanket fell open and the detective saw what appeared to him as the butt of a rifle. The blanket and its contents were placed on the back seat of the Buick. Peckham also placed a blue-colored box in the Buick. Later, Kralik and a female companion arrived in a Volkswagen automobile. Kralik carried a brownish colored suitcase which he placed in the Buick. He opened the suitcase, moved his hands inside the Buick, opened the trunk, and placed the suitcase in it. Peckham and Kralik drove off in the Buick with Peckham driving.

The detective called for, and received, assistance. The Buick was followed for some time and finally stopped at a service

station. Peckham and Kralik were arrested. The car was seized, but not searched, and driven to a police garage by an officer. Gamage, a special agent of the Federal Bureau of Alcohol, Tobacco, and Firearms, was called. After talking to the police officers, Gamage obtained a search warrant on the basis of his affidavit which stated in part:

"On May 4, 1978, Wichita Police Detective Don Goseland told me that he saw Larry Dale Peckham, whom I know to be a convicted felon, place a carbine in the back seat of a 1975 White colored Buick automobile bearing 1978 Kansas tag # SG R 20621 at approximately 3:30 PM this date. Detective Goseland also stated that he saw Peckham put blue colored box measuring approximately 6 × 10 × 3 inches in the trunk of the above described vehicle. Peckham, after advice of rights stated to S/A John W. Workman, ATF that John Kralik put a 'sawed off shotgun' in the trunk of the above described vehicle, and it is still there. * * * *.

I have personal knowledge from my experience as a Special Agent for the U.S. Bureau of Alcohol, Tobacco and Firearms that the above described blue colored box is normally associated with and contains a handgun manufactured by Smith and Wesson. I also know that Larry Dale Peckham was convicted in 1975 for violations of the Federal Firearms Laws and Federal Explosive Laws. Specifically he was convicted of receiving a firearm after he had been convicted of a felony, in violation of 18 U.S.C. app. 1202(a)(1). I also know that no carbines are manufactured in the state of Kansas."

The search warrant was issued by a state district judge of Kansas. See Rule 41(a), F.R.Crim.P. The warrant recites that the affidavit of Gamage shows that he has reason to believe that on the premises known as "a 1975 white colored Buick automobile bearing 1978 Kansas tag SG R 20621 presently located at the Wichita Police Garage, 455 N. Main, Wichita, Sedgwick County, Kansas in the District of Kansas there is now being concealed certain property namely a carbine type rifle, short barreled [crossed out and above it in handwriting "sawed off"] shotgun, one Smith and Wesson blue colored box and ammunition for the carbine type rifle and any other weapon." The warrant finds probable cause and commands a search of the "place named for the property specified."

The search was promptly made by Gamage in the presence of other officers. The first areas searched were those in plain sight. A handgun was found under the right front seat of the Buick. The trunk was opened and the officers saw an unlocked suitcase which Goseland identified as the one put in the car when it was parked in the Peckham driveway. The suitcase was opened and underneath some clothing the officers found a sawed off shotgun.

Peckham and Kralik were both indicted. Peckham pleaded guilty. Kralik was charged in Count I with possession of the shotgun and in Count II with possession of the handgun. He filed a motion to suppress the evidence obtained from the search of the suitcase asserting (1) no search warrant for the suitcase, (2) no consent by him to the search, and (3) no "exigent circumstances." The trial court denied the motion to suppress. The shotgun was received in evidence over the objection of the defendant. The jury found Kralik guilty under Count I pertaining to the shotgun and not guilty under Count II relating to the handgun.

On this appeal Kralik does not contest the validity of the search warrant for the car. He complains of the search of his suitcase found in the trunk. The government does not claim that Kralik consented to the search of the suitcase. When the search warrant was executed, the Buick was in police custody and Peckham and Kralik were in jail.

In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538, the Supreme Court on Fourth Amendment grounds rejected evidence found in a double-locked footlocker which had been placed in the trunk of a waiting automobile. The Court

held that there were no exigent circumstances and that the warrantless search of the footlocker deprived the defendants of the protection of the Warrant Clause of the Fourth Amendment.

*Arkansas v. Sanders,* 442 U.S. 753, 764–765, 99 S.Ct. 2586, 2593–2594, 61 L.Ed.2d 235, extends the Chadwick principle to the search of luggage found in an automobile properly stopped and searched for contraband. In *United States v. Meier,* 10 Cir., 602 F.2d 253, we followed *Chadwick* and *Sanders* and upheld the suppression of evidence found in an unlocked backpack during a proper search without a warrant of an automobile.

The case at bar differs from *Chadwick, Sanders,* and *Meier* in that the agents had a valid search warrant which described the automobile in which a sawed off shotgun was concealed and commanded a search for the specified property, i. e., the shotgun. The mentioned cases emphasize the desirability of judicial approval of the officers' actions. Here we have judicial approval.

The Warrant Clause of the Fourth Amendment says:

> " * * * no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Here, the warrant was issued upon a probable cause showing supported by an affidavit under oath detailing the pertinent facts. The warrant authorized the search of a Buick automobile in which a sawed off shotgun was concealed and commanded the seizure of the specified property, the shotgun.

The issue is whether in such a case, the officers must obtain another warrant for the suitcase. In *United States v. Kahn,* 415 U.S. 143, 155, n.15, 94 S.Ct. 977, 984, n.15, 39 L.Ed.2d 225, the Court said with reference to an authorized wiretap interception:

> "In fact, as long as the property to be seized is described with sufficient specificity, even a warrant failing to name the owner of the premises at which a search is directed, while not the best practice, has been held to pass muster under the Fourth Amendment." (Citing cases.)

We find nothing in *Ybarra v. Illinois,* —— U.S. ——, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) to the contrary. That case was concerned with a warrant for the search of a tavern and its bartender for heroin. Evidence found on the person of a patron was held inadmissible under the Fourth Amendment. We do not equate the search of a person unnamed in a warrant with the search of a described automobile for a specified item. A person is not an inanimate container, an automobile is.

Nothing in the record shows that the officers knew, or had reason to know, who owned either the Buick or the suitcase. The essence of the issue is whether an additional search warrant is required for each container within a larger container when the warrant covers the search of the larger for a specified item. We believe that the Fourth Amendment does not require the second or additional warrant. Any other result is inconsistent with practicality. Many containers can be placed one within the other. Theory should not be entirely divorced from practicality.

Affirmed.